**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **BETTY C. BRIDGES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL NO. 3:08CV253** |
| ) | |
| **DR. JAMES S. REINHARD** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

This matter is before the Court on the Defendant Dr. James S. Reinhard's ("Reinhard")

Motion for Summary Judgment (Docket No. 23).  For the reasons set forth herein, the

Defendant's Motion will be DENIED.

### I.  Factual Background[1]

The Plaintiff, Betty C. Bridges ("Bridges"), a former employee of the Commonwealth of

Virginia's Piedmont Geriatric Hospital ("Piedmont"), has filed a complaint asserting that: (1)

Piedmont failed to accommodate her disability; and (2) her employment was wrongfully

terminated because of her disability, all in violation of the Americans with Disabilities Act

("ADA").  The Defendant, Dr. James S. Reinhard, is being sued in his official capacity as the

Commissioner of the Virginia Department of Mental Health, Intellectual Disability and

Substance Abuse Services.

---

[1]  All facts and reasonable inferences will be reviewed in the light most favorable to the
Plaintiff, as the non-moving party on this motion.  See Seabulk Offshore, Ltd. V. American
Home Assur. Co., 377 F.3d 408, 418 (4th Cir. 2004).

Bridges was a registered nurse at Piedmont from May 10, 2006 until June 15, 2006 when her employment was terminated. (Compl. ¶ 8.)[2]  Bridges alleges that when she was hired, she informed Piedmont that she suffered from a severe respiratory allergy to Amylcinnamaldehyde, a chemical commonly found in perfumes and household cleaning items. (Bridges Dep. at 24.)  At the commencement of her employment, Bridges completed an intake form indicating her condition; however, she did not provide Piedmont with any medical documentation dictating the severity of her allergy. (Def.'s Mem. in Supp. Mot. Summ. J. "Def.'s Mem." at Ex.1.) Subsequently, while working at Piedmont, Bridges claims she experienced three incidents involving an allergic reaction to amylcinnamaldehyde, but that her symptoms quickly abated, and therefore no resulting incident reports or documentation were created.  (Bridges Dep. 39-42.) On June 9, 2006, in a fourth and separate incident, Bridges claims that she came into contact with laundry detergent, which contained the chemical, in her unit's laundry room, and as a result, she suffered an allergic reaction. (Compl. ¶ 11.)  Bridges states that the detergent she came into contact with was not the regular detergent used by the hospital, and hospital staff confirmed that it was only used occasionally in the unit's laundry room in emergency situations, or to wash medical devices such as slings, compression hose and lifts. (Compl. ¶ 17; Wimsatt Aff. ¶ 3.)

After the June 9, 2006 incident, Bridges asserts that she requested that the hospital change the detergent which contained the chemical and that she offered to pay for the expense of the exchange. (Compl. ¶ 13.)  On June 14, 2006 Bridges alleges that she informed her supervisor of her request for a disability accommodation.  (Compl. ¶ 14.)  On June 15, 2006, according to

---

[2]  All citations to the Complaint in this matter refer to Plaintiff's Amended Complaint, dated July 17, 2007 (Docket No. 13).

deposition testimony, three of Bridges supervisors met to discuss two issues regarding Bridges: first, her allergic reaction to the laundry detergent on June 9, 2006, and second, her performance in the probationary program since she had started working at Piedmont. (Maxfield Dep. at 57, 62-65.)  It was determined at the meeting that Bridges' respiratory problem was not a disability that required accommodation under the ADA because Bridges did not have any job related responsibilities that would require her to be in the unit laundry room, and because her reaction to the laundry detergent on June 9, 2006 did not require her to leave work that day or to receive any medical attention. (Maxfield Dep. at 54, 57 62.)  After discussing the detergent incident, Bridges' supervisors discussed her job performance. (Maxfield Dep. at 64-67.)  Defendant alleges that Bridges had received a number of poor performance reviews, particularly pertaining to her ability to perform her basic job functions. (Maxfield Dep. at 36, 64-65.)  Defendant claims that Bridges' supervisors felt as though it was taking more time than necessary for her to learn the proper procedures associated with her job, and that she was not grasping the skills needed to perform without continuous supervision. (Maxfield Dep. at 64-65.)  Additionally, the training staff working with Bridges during this period felt as though her expressed attitude was adversarial, particularly towards the hospital's policies and procedures.  (Maxfield Dep. at 66-67.)

That same afternoon, following the supervisors' meeting, Bridges was notified of her termination via letter.  In pertinent part, the letter states:

> After an assessment of your progress since you began your employment on May 10th in nursing orientation, we have decided to end your employment immediately during the probationary period.  The learning curve is too steep with your extended absence from nursing.  This termination is not a reflection on you; it is instead an issue of being suitable for the special needs of the geriatric population with a mental health diagnosis.

3

(Def.'s Mem. at Ex. 5.)  Since her termination at Piedmont, Bridges has held two jobs.  From April 2007 through May 2008, Bridges worked for the Virginia Department of Health as a health educator, and from June 2008 to the present, she has been employed by the Woodlands (a health care complex) as a registered nurse. (Bridges Dep. at 8-9.)  Bridges has testified that although there has been a risk of exposure in each position she has held since leaving Piedmont from being exposed to amylcinnamaldehyde, she has nevertheless felt comfortable because each employer has taken different measures to accommodate her condition. (Bridges Aff. ¶¶ 55-56.)

Bridges also testified that, although previously prevented from doing so due to the commonality of amylcinnamaldehyde, she can currently go to the grocery store, church and department stores because the chemical is being generally "phased out" of use.  (Bridges Dep. at 19-20.)  Bridges claims that the only places she currently avoids due to her chemical allergy are events at the Coliseum (an enclosed sports facility), baby and wedding showers and any locations from which she cannot quickly retreat.  (Bridges Dep. at 19-20.)  Bridges admits that there are no jobs that she would wish to engage in at present that she would not be able to engage in due to her allergies, although she would avoid jobs where she was in daily contact with numerous people, such as that of a receptionist.    (Bridges Dep. at 77-78.)

## II. <u>Procedural History</u>

On June 29, 2006, Bridges filed notice with the Equal Employment Opportunity Commission in which she alleged employment discrimination by Piedmont.  After the parties failed to resolve the matter by agreement, Bridges was issued a Notice of Right to Sue. Plaintiff's initial Complaint was filed in this Court on April 24, 2008, and it initially named Commonwealth of Virginia, Piedmont Geriatric Hospital as the defendant.  Thereafter, and

pursuant to a Consent Order, Bridges filed an Amended Complaint on July 17, 2008 naming Dr.

Reinhard as the sole defendant in his capacity as Commissioner of the Department of Mental

Health, Intellectual Disability and Substance Abuse Services.  Dr. Reinhard thereafter filed a

motion to dismiss, which was denied in an Order by this Court on September 26, 2008.  On

November 10, 2008, Defendant filed the instant motion for summary judgment currently before

the Court.

### III.  Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The

relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  In

reviewing a motion for summary judgment, the Court must view the facts in the light most

favorable to the non-moving party.  Id. at 255.

Once a motion for summary judgment is properly made and supported, the opposing

party has the burden of showing that a genuine dispute exists.  Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  The mere existence of some alleged factual

dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S.

at 247-48 (emphasis in original).  Indeed, summary judgment must be granted if the nonmoving

party "fails to make a showing sufficient to establish the existence of an element essential to that

5

party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). To defeat an otherwise properly supported motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of some "metaphysical doubt" concerning a material fact. <u>Lewis v. City of Va. Beach Sheriff's Office</u>, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (citations omitted). Of course, the Court cannot weigh the evidence or make credibility determinations in its summary judgment analysis. <u>Williams v. Staples, Inc.</u>, 372 F.3d 662, 667 (4th Cir. 2004).

Furthermore, a "material fact" is a fact that might affect the outcome of a party's case. <u>Anderson</u>, 477 U.S. at 247-48; <u>JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.</u>, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248; <u>see also</u> <u>Hooven-Lewis v. Caldera</u>, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material" fact only arises when the evidence, when viewed in the light most favorable to the non-moving party, is sufficient to allow a reasonable jury to return a verdict in that party's favor. <u>Anderson</u>, 477 U.S. at 248.

## IV. <u>Analysis</u>

The ADA makes it unlawful for a covered entity to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a) (2008). To establish a case under the Act, the Plaintiff must show that: (1)

6

that they have a disability; (2) they are otherwise qualified to perform the job in question; and (3) they were discharged solely because of their disability.  See Halperin v. Abacus Tech. Corp., 128 F.3d 191, 197 (4th Cir. 1997) (*rev'd on other grounds*).  The only issue raised by the Defendant in his Brief in Support of his Motion for Summary Judgment is whether or not Bridges is a "qualified" person under the Act.

In order to qualify as a member of the ADA's protected class, a Plaintiff must first demonstrate that she is disabled within the meaning of the Act.  See Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 467 (4th Cir. 2002).  The ADA alternately defines disability as: "(a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (b) a record of such impairment; or (c) being regarded as having such an impairment." 42 U.S.C. § 12102(2).  As each of these alternative definitions necessitate a separate analysis, they will be discussed separately as they each relate to Bridges' ADA claims.

**A.    Physical or Mental Impairment that Substantially Limits a Major Life Activity**

To qualify under the first definition of "disabled" under the ADA, a plaintiff must demonstrate that they "have a physical or mental impairment that substantially limits one or more of the[ir] major life activities . . . " 42 U.S.C. § 12102(2)(a).  The Supreme Court has proclaimed a three step process to aid courts in their application of this definition. "First, the Court is to look at whether the plaintiff suffered from a physical or mental impairment; then it is to 'identify the activity upon which the respondent relies . . . and determine whether it constitutes a major life activity under the ADA;' and thirdly, the Court is to determine 'whether the impairment substantially limited the major life activity." James v. Strayer University, No. 1:07cv151, 2007 WL 4224694, at *2 (E.D. Va. Nov. 27, 2007) (quoting Bragdon v. Abbott, 524 U.S. 624, 630 (1988)).  In this case, the parties agree that the two major life activities at issue are

that of "working" and "breathing" and that each qualifies as a major life activity as defined by

the Act.[3]  Additionally, the Defendant does not dispute that Bridges' allergy to

amylcinnamaldehyde constitutes an impairment for purposes of this analysis.  Thus, the only step

this Court must take in regard to the first definition of "disabled" is to determine if Bridges'

allergy impairment substantially limits her major life activities of working and breathing.

      The term "substantially" as contained in the statutory language has been defined as

"'considerable or to a large degree.'" Heiko v. Colombo Savings Bank, F.S.B., 434 F.3d 249,

256 (4th Cir. 2006) (citing Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 196 (2002)).

In determining whether a plaintiff is substantially limited, several factors must be considered,

including the nature and severity of the impairment, the duration or expected duration of the

impairment, and the permanent or long term impact of the impairment.  29 C.F.R. § 1630.2(j)(2);

see also Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 467-68 (4th Cir. 2002).  Thus, in

conducting this analysis during a summary judgment review, a "court must look to see whether

the [plaintiff] produced enough evidence from which a reasonable factfinder could conclude that

the nature and severity of [her] impairment significantly affected [her] ability to perform major

life activities as compared to an average member of the general population."  Vailes v. Prince

---

    [3]  The ADA does not define which activities constitute "major life activities" for
purposes of analyzing a disability under the ACT.  See Heiko v. Colombo Savings Bank, F.S.B.,
434 F.3d 249, 254 (4th Cir. 2006) (citing Torcasio v. Murray, 57 F.3d 1340, 1353 (4th Cir.
1995)).  "The Supreme Court has, however, explained that '[m]ajor' in the phrase 'major life
activities' means important'" Id. (quoting Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S.
184, 197 (2002)).  As the parties do not dispute that "working" and "breathing" constitute major
life activities for purposes of the disability analysis, and as the Fourth Circuit has recognized
both as such, this Court will proceed with its analysis assuming both are major life activities
under the ADA.  See 29 C.F.R. Pt. 1630, App. 1, § 1630.2(i); Foore v. City of Richmond, 6 Fed.
Appx. 148, 153 (4th Cir. 2001); Vailes v. Prince George's County, Md., 39 Fed. Appx. 867, 869
(4th Cir. 2002) (unpublished).

George's County, Md., 39 Fed. Appx. 867, 869 (4th Cir. 2002) (unpublished) (citing Kelly v. Drexel Univ., 94 F.3d 102, 105-06 (3d Cir. 1996)).

As the major life activities of working and breathing have separate and unique analyses given the aforementioned standards, each will be analyzed in turn.

       1.      <u>Substantially Limits the Major Life Activity of Working</u>

In addition to the above mentioned factors, in order to be considered substantially limited in the major life activity of working, a Plaintiff must demonstrate that their impairment precludes them from "'more than one type of job, a specialized job, or a particular job of choice.'" <u>Rhoads v. Federal Deposit Insurance Corp.</u>, 257 F.3d 373, 388 (4th Cir. 2001) (quoting <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471, 492 (1999)). "If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs." <u>Taylor v. Federal Express Corp.</u>, 429 F.3d 461, 464 (4th Cir. 2005). Thus, a plaintiff cannot substantiate their claim of disability by a showing that their impairment prevents them from performing "singular demands of a particular job," but instead they must demonstrate that they are foreclosed generally from obtaining the type of employment involved in the case. <u>See</u> <u>Gupton v. Commonwealth of Virginia</u>, 14 F.3d 203, 205 (4th Cir. 1994) (quoting <u>Forrisi v. Bowen</u>, 794 F.2d 931, 933 (4th Cir. 1986)).[4]

A thorough review of the record presented thus far demonstrates that sufficient evidence exists to create a genuine issue of a material fact as to whether Bridges is substantially limited in

---

[4] The Court notes that these cases are interpreting the language of the Rehabilitation Act, and not the ADA. However, because the definition of "disability" is virtually identical in both statutes, the Fourth Circuit has applied the same analysis to claims under both statutes. <u>See</u> <u>Atkins v. USF Dugan, Inc.</u>, 106 F. Supp. 2d 799, 808 n.9 (M.D.N.C. 1999) (citing numerous Fourth Circuit cases applying the same standards to the ADA and Rehabilitation Act disability definitions.)

the major life activity of "working."  Bridges has testified that, although she is not currently impaired from pursuing a career in her chosen field of nursing, she has only been able to maintain her employment because of her employers' willingness to make accommodations for her.  (Bridges Aff. ¶¶ 55-56; Bridges Dep. at 74.)  Bridges has worked for two different employers since leaving Piedmont, both which she asserts have made accommodations for her chemical sensitivity. (Pl.'s Mem. at 10.)  Her first employer, after a formal accommodation request, allowed Bridges to utilize her own car instead of the employer's vehicle for work purposes so that she would not risk being exposed to any amylcinnamaldehyde residue from other drivers' hair or beauty products.  (Bridges Aff. ¶ 55.)  Bridges also contends that her second and current employer has also extended her accommodations by changing the cleaning products used by the housekeeping unit at the facility so that her condition would not be aggravated.  (Bridges Aff. ¶ 56.)

Defendant argues that such alleged "accommodations" are merely courtesies extended to her by her employers, and not formal accommodations as defined by the ADA.  While such may be the case, there is no evidence at present that indicates what Bridges' employers' intent has been in changing their practices; not is there evidence disputing that they are "formal" accommodations under the ADA.  Accordingly, the Court is not willing to assume, as a matter of law, the insignificance of such actions.  Given the alleged commonality of the chemical involved, and Bridges' testimony that certain employers have accommodated her allergy, the Court finds that there is material disputed fact concerning the issue that precludes dispositive relief.

2.    Substantially Limits the Major Life Activity of Breathing

The factors considered when determining if a plaintiff is substantially limited in the

major life activity of breathing are also the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long term impact of the impairment. 29 C.F.R. § 1630.2(j)(2).  Such a determination is necessarily made on a case-by-case basis, particularly when the alleged impairment is asthma or allergies.[5]  See Tangires v. The Johns Hopkins Hospital, 79 F. Supp. 2d 587, 594-95 (D. Md. 2000).  The severity of the condition can vary significantly from individual to individual, as well as the nature of the allergen involved and the duration of any episode.  See id.  As such, it is necessary to examine the particular symptoms alleged by the Plaintiff, the duration of her episodes, the commonality of the allergen involved and the overall impact the allergen has on her ability to breathe.

Upon review of the supporting memorandum and exhibits provided by the parties, the Court concludes that there is enough evidence, at least when viewed in the light most favorable to Plaintiff, as required,  to create a genuine issue of material fact as to whether Bridges was substantially limited in the major life activity of breathing at the time of her termination from Piedmont Hospital.  Bridges has alleged that she is allergic to a very common chemical which many people can encounter on a daily basis. (Compl. ¶¶ 9-10.)[6] As she stated in her complaint, amylcinnamaldehyde is a common chemical found in products such as cleaning supplies, laundry detergent, perfumes and hair products. (Compl. ¶ 10; Bridges Dep. at 41.)   Because of its commonality, Bridges has testified that she cannot know when or where she will encounter the chemical, or what products may trigger an allergic reaction. (Bridges Dep. at 16-17.)  She has

---

[5]  Although Plaintiff's complaint alleges an "allergy" to amylcinnamaldehyde, in the summary judgment pleadings and at the hearing, it was explained to the Court that the essential symptoms and reactions suffered by Ms. Bridges are that of an asthma attack.

[6]  For purposes of this Memorandum Opinion, citations to the Complaint ("Compl.") refer to the Plaintiff's Amended Complaint dated July 17, 2008 (Docket No. 13).

testified that, although she has felt more comfortable in recent years in being in public places due to a general "phasing out" of the chemical, she still avoids large crowds or places where she might not be able to leave quickly and that she has had reactions in the past in places such as her doctor's office, at her children's school and at grocery stores. (Bridges Aff. ¶¶ 11, 25-27; Bridges Dep. at 24.)

Defendant argues in response that even if Plaintiff experiences periods of wheezing or impaired breathing when she is exposed to amylcinnamaldehyde, such a reaction does not constitute a substantial limitation on the major life activity of breathing, because the episodes are transient or situational, and do not have a long term or extended impact on her ability to breathe. (Def.'s Mem. at 12-14.)  As Defendant correctly notes, many courts have found certain allergies to be only situational impairments, with impacts that are transient in nature and without any substantial long term impact on a claimant's ability to breathe.  See e.g. White v. Honda of America Mfg., Inc., 241 F. Supp. 2d 852 (S.D. Ohio 2003) (plaintiff's asthma not a substantial impairment under the ADA when it was only triggered intermittently, and her daily activities were generally unaffected); Watson v. Hughston Sports Med. Hosp., 231 F. Supp. 2d 1344 (M.D. Ga. 2002) (plaintiff's allergy to latex, while severe, did not constitute a severe impairment in breathing because the allergy was otherwise dormant when plaintiff was not exposed to latex); Tangires, 79 F. Supp. 2d at 596 (Plaintiff whose asthma was mitigated by corrective measures was not a qualified individual under the ADA); Dunford v. Food Lion, Inc., No. 199CV00137, 2001 WL 902527, at *4 (W.D. Va. July 5, 2001) (individual whose asthma was triggered only by certain cleaning chemicals was considered to have a transient impairment, only effecting her breathing upon exposure to specific chemical).  However, Bridges' allergy and asthma-like symptoms are not triggered by a finite or specific allergen that can be easily avoided or simply

12

removed from her presence.  According to the testimony and the exhibits presented, there is evidence that amylcinnamaldehyde is present in very commonly used products, and that Bridges may be exposed, without notice or opportunity to avoid , in a variety of routine or "everyday" environments. (Bridges Dep. at 16-17.)  Indeed, the medical record provided by Bridges, although scant, does state that potentially over 500 products contain amylcinnamaldehyde, and as Bridges testified, she has no way of definitively knowing when she may come into contact with the chemical. (Pl.'s Mem. at Ex. 4.)

Although there has been testimony by Bridges that the chemical is being "phased out" of use, such evidence does not address how such an evolving circumstance may impact on Bridges' exposure to the allergen at present or at the time her employment was terminated by Piedmont. (Bridges Dep. at 20.)  At present, there is evidence of record that amylcinnamaldehyde is a chemical found in common cleaning and beauty products; that there are limited ways for Bridges to anticipate or protect herself from exposure to the chemical; and when exposed to the chemical, she can suffer impairments which can last a few minutes or significantly longer, depending on the nature and extent of the exposure.  Accordingly, there is sufficient evidence in the record to create a genuine issue of material fact as to whether Bridges is substantially limited in the major life activity of breathing.

**B.     Record of Impairment**

The second, alternate definition for disability in the ADA provides that an individual who establishes a record of an impairment that substantially limits a major life activity qualifies under the Act.  According to the relevant regulations, to have "a record of such impairment" means that the claimant "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits on or more major life activities."  29 C.F.R. § 1630.2(k).  To

establish a record of disability, a claimant must produce "a record relied upon by an employer indicat[ing] that the individual has or has had a substantially limiting impairment." 29 C.F.R. Pt. 1630, App. § 1630.2(k). However, there is no requirement that a specific type or form of record be established. "Many types of records . . . could potentially contain this information, *including but not limited to*, education, medical or employment records." 29 C.F.R. Pt. 1630, App. § 1630.2(k) (emphasis added). The case law in this Circuit does not provide many additional guidelines for analyzing whether an appropriate record exists; however, the case law does confirm that the record must include information linking the impairment to a significant limitation of a major life activity suffered by the claimant. See James v. Strayer Univ., No. 1:07cv151, 2007 WL 4224694, at *2 (E.D. Va. Nov. 27, 2007); see also Foore v. City of Richmond, Fed. Appx. 148, 153 (4th Cir. 2001). It therefore is not sufficient for the Plaintiff to simply establish that she previously sought medical advice or received treatment for her alleged impairment. See Burch v. Coca-Cola Co., 119 F.3d 305, 321-22 (5th Cir. 1997). Instead, the Plaintiff's record must demonstrate, essentially, that she suffers from a significant, preexisting limitation. See Miles-Hickman v. David Power Homes, Inc., No. H-07-0754, 2008 WL 4681947, at *9 (S.D. Tex. Oct. 21, 2008).

The Defendant argues that Plaintiff cannot establish a disability under the "record of" definition because Piedmont never received medical records or other documents indicating that Plaintiff suffered from an impairment that substantially limited the major life activities of working or breathing. (Def.'s Mem. at 15.) Essentially, Defendant argues that the language in the regulations, which states that the record must be one which the employer relied upon, means that the employer must have received all, or at least a significant part, of that record. Plaintiff replies by asserting that Defendant's interpretation of the applicable regulations is too narrow,

and that such an interpretation places an undue burden on an employee to produce more information then is necessary or otherwise warranted by the Act.  Instead, Plaintiff argues, relying on the recent decision in <u>Adams v. Rice</u>, 531 F.3d 936 (D.C. Cir. 2008), that the relied-upon language in the regulations only requires Plaintiff to establish that Piedmont had notice or was aware that she had suffered from an impairment that substantially limited her ability to work and/or breathe.

In <u>Adams v. Rice</u>, the Plaintiff sued the United States Department of State under the Rehabilitation Act, claiming she had been discriminated against because she had previously suffered from breast cancer.  <u>See</u> <u>Adams</u>, 531 F.3d at 939.  Plaintiff had been a candidate for the United States Foreign Service, and after passing the written and oral exams and receiving a medical clearance, she was diagnosed with stage-1 breast cancer.  <u>See</u> <u>id.</u> at 940.  Plaintiff underwent a successful mastectomy, and after several months, her doctor determined that she was in complete remission with an excellent prognosis.  <u>See</u> <u>id.</u> at 940-41.  Nevertheless, when the State Department learned of Plaintiff's condition, they conducted a second review of her medical records and classified her in the lowest medical category (that rendered her ineligible for certain positions), despite her treating physician's recommendation that she was cancer free and would suffer no subsequent job limitations.  <u>See</u> <u>id.</u> at 941.

Plaintiff filed suit and the district court granted summary judgment for the Defendant, finding that Plaintiff had failed to demonstrate that she had a disability as defined by the Rehabilitation Act.  <u>See</u> <u>id.</u>  Plaintiff appealed, and the District of Columbia Circuit Court reversed and remanded the case, holding that Plaintiff had provided sufficient evidence that she had a record of an impairment that substantially limited her in a major life activity.  <u>See</u> <u>id.</u> at 954.  The Circuit Court explained that the term "record" should not be read too narrowly,

15

particularly given that the regulations define the definition "record of such impairment" as "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." Id. at 946 (citing 45 C.F.R. § 84.3(j)(2)(iii)) (emphasis in original). The Court found that such broad language was meant to be inclusive of all types of "records", and that while many would involve tangible documents, a Plaintiff may successfully make a showing under this definition "simply by showing that they 'ha[ve] a history of' a qualifying impairment." Id. Additionally, the Court held that while an employer must be aware of a Plaintiff's alleged previous impairment, under the "record of" definition, the employer is not required to have knowledge of how the alleged impairment substantially limited Plaintiff's major life activities. See id. at 952. As the Court explained, discrimination based on a prior impairment does not become more or less harmful under the Act if the Plaintiff's employer had specific knowledge about the Plaintiff's limitations at the time. See id. at 953. Thus, under the "record of" definition, the Court found that "it is enough for the employer to know about the impairment," without a requirement that they know the specifics of the Plaintiff's limitations. Id.

Having reviewed the relevant regulations and case law, this Court is in agreement with the Adams Court's analysis as applied to the ADA. The Rehabilitation Act regulations that served as the basis for the Court's analysis in Adams are identical to the regulations defining "record of such impairment" under the ADA. As previously noted, the definition of "disability" is virtually identical in both statutory schemes, and the Fourth Circuit has applied the same analysis to claims under each statute. See Atkins, 106 F. Supp. 2d at 808 n.9.

Additionally, this Court notes that the court's analysis in Adams is the only interpretation of the "record of" definition that gives full effect to the original purpose of that provision of the Act. As explained in the regulation, the "record of" definition was included in the Act to "ensure

that people are not discriminated against because of a history of disability."  29 C.F.R. Pt. 1630,

App. § 1630.2(k).  If the definition were read to require a claimant to fully disclose their

impairment, as well as provide their employer with a full medical record or specific details about

their previous limitations, it would place an undue burden on the claimant.  Not only would there

be a practical problem with a claimant determining how much information would be required to

preserve a claim under the ADA, but such an interpretation may discourage a person with a

history of a disability from seeking certain employment because of a desire not to have to share

their entire medical history with a future employer.  Given such considerations, this Court finds

that under the "record of" definition, a Plaintiff is only required to demonstrate that they have a

history of an impairment which has substantially limited one or more of their major life

activities, and that their employer need only have knowledge that the claimant suffered from

such impairment.

Applying the standard, Plaintiff has produced sufficient evidence to demonstrate a

genuine issue of material fact as to whether she had a "record of such impairment" under the

Act.  Plaintiff submitted a Voluntary Employee Certification form disclosing her alleged

disability to Piedmont.  (Def.'s Mem. Ex. 1.)  On the form, which appears to be a standard form

provided to employees by the Defendant, Plaintiff stated that she has a "severe respiratory

allergy to common fragrance chemical."  (Def.'s Mem. Ex. 1.)  Plaintiff also testified that when

she called to inquire about the position at Piedmont in 2006, she spoke to someone in the human

resources department and explained her allergy as well as her concerns about the required

orientation program.  (Bridges Dep. at 24; Bridges Aff. ¶ 33.)  When she later interviewed with

another source (Unit Coordinator) at Piedmont, Plaintiff testified that she again explained her

allergy and that she had not been employed as a nurse since 1990 because of her fragrance

sensitivity.  (Bridges Aff. ¶ 34.)  Bridges states that she told the Unit Coordinator at that time

that, although the chemical was being phased out generally in the public domain, there was still a

possibility of exposure in the proposed position  that could trigger a severe asthmatic reaction for

her.  (Bridges Aff. ¶ 34.)

        In addition to establishing Piedmont's knowledge of her allergy, Plaintiff has also

submitted evidence in the form of an affidavit and a doctor's record which demonstrate at least

the beginning of a "history of" a previous disability.  For example, Plaintiff's doctor's notes state

that Plaintiff was allergic to a chemical that could be found in over 500 different products, and

that when exposed Plaintiff could have a severe reaction.  (Pl.'s Mem. Ex. 4.)  Plaintiff

supplements the record in her affidavit by explaining how her asthma effected her when she was

first diagnosed.  (Bridges Aff. ¶ 24.)  Plaintiff describes how she would suffer from reactions

every time she left her residence, and how after an attack, she would suffer on occasion from

muscle and joint aches, wheezing and sometimes a low grade fever.  (Bridges Aff. ¶ 24.)  Given

such evidence, it is clear that there is a genuine issue of material fact sufficient to preclude

summary judgment as to whether she has a record of a disability for purposes of qualifying for

recovery under the ADA.

**C.      Being Regarded as Having an Impairment**

        The third, and final, definition for disability under the ADA allows a person, who

otherwise is not considered disabled, to qualify as disabled under the Act by establishing that

they have been regarded by their employer as having an impairment that substantially limits a

major life activity. See 42 U.S.C. § 12102(c).  The phrase "regarded as having such impairment"

has been defined, in pertinent part, by the regulations as meaning that the person "[h]as a

physical or mental impairment that does not substantially limit major life activities but is treated

18

by a covered entity as constituting such limitation." 29 C.F.R. § 1630.2(l)(1); <u>see also</u> <u>Atkins v.</u>

<u>Dugan, Inc.</u>, 106 F. Supp. 2d 799, 807 (M.D.N.C. 1999.) In conducting an analysis pursuant to

this definition, a court's decision must "turn" on the actions and reactions of the claimant's

employer. As such, "an employer does not necessarily regard an employee as handicapped

simply by a finding that the employee to be incapable of satisfying the singular demands of a

particular job." <u>Atkins</u>, 106 F. Supp. 2d at 807; <u>see also</u> <u>Manson v. North Carolina A & T State</u>

<u>University</u>, No. 1:07CV867, 2008 WL 2987071, *7 (M.D.N.C. July 31, 2008) (citing

<u>Runnebaum v. Nations Bank of Md., N.A.</u>, 123 F.3d 156, 172 (4th Cir. 1997). Similarly, "the

fact that an employer is aware of an employee's impairment, without more, is 'insufficient to

demonstrate either that the employer regarded the employee as disabled or that perception

caused the adverse employment action.'" <u>Haulbrook v. Michelin North America</u>, 252 F.3d 696,

703 (4th Cir. 2001) (quoting <u>Kelly v. Drexel Univ.</u>, 94 F.3d 102, 109 (3d Cir. 1996)). Instead,

given the regulation's requirement that the employer must regard the plaintiff as having a

substantial limitation, it must be established that the employer believed the plaintiff, due to his

impairment, is generally foreclosed from the type of employment that is at issue. <u>See</u> <u>Atkins</u>,

106 F. Supp. 2d at 807 (citing <u>Forrisi v. Bowen</u>, 794 F.2d 931, 934-35 (4th Cir. 1986)).

Here, both parties concurred in oral argument that the issue is the weakest argument for

establishing that Plaintiff is a qualified disabled person for recovery under the ADA; however,

Plaintiff nevertheless maintains that, given the information Piedmont received from her about her

disability, and given the alleged reaction to the incident at issue in this case, she believes that she

was regarded by the hospital as having a disability for purposes of recovery under the ADA.

(Pl.'s Mem. at 13-14.) The Court notes that in support of the argument, Plaintiff has only

alleged inferences, from which this Court would be hesitant to draw any conclusions, certainly as

19

a matter of law.  Moreover, given that there are other genuine issues of disputed material fact to sustain a finding by the factfinder that Plaintiff is disabled under the two definitions requiring that Plaintiff is or has a record of suffering from a substantial limitation affecting one or more of her major life activities, the Court concludes that it is unnecessary to make any definitive determination as to the substance of Plaintiff's claim pursuant to the final, alternative definition.

## V. <u>Conclusion</u>

Finding that Plaintiff has established sufficient facts to create a genuine issue of disputed material fact as to the issue raised in the motion, namely, whether she is disabled as defined by the ADA, Defendant's Motion for Summary Judgment (Docket No. 23) is DENIED.

An appropriate order shall issue.


_____/s/_____
Dennis W. Dohnal
United States Magistrate Judge


Dated:  December 29, 2008
Richmond, Virginia